UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MAXIMUM AVAILABILITY LIMITED, a New Zealand corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| COMPUTER BUSINESS SOLUTIONS, INC., an Oklahoma corporation, | ) ) Case No. 09-CV-416-CVE-PJC |
| Defendant, | ) ) ) |
| and | ) ) |
| RANDY LEE DOWNING, | ) ) |
| Garnishee. | ) |

**OPINION AND ORDER**

Now before the Court are Plaintiff's Motion for Summary Judgment Against the Garnishee and Brief in Support (Dkt. # 45), garnishee Randy Lee Downing's Opposed Motion for Leave to Amend Garnishee's Answer and Brief in Support (Dkt. # 46), and Garnishee's Motion for Summary Judgment Against Judgment Creditor and Brief in Support (Dkt. # 48).

**I.**

Randy Lee Downing (Downing) was the chairman, president, and owner of defendant Computer Business Solutions, Inc. (CBSI), a Subchapter S Corporation.[1]  Dkt. # 45-1, at 2-3, 14.

---

[1] Under Subchapter S of the Internal Revenue Code, certain closely-held corporations may elect to be accorded special tax treatment under which income, deductions, and losses are passed through to shareholders. 47B C.J.S. Internal Revenue § 374 (2011). The income of a Subchapter S corporation is treated as income of the shareholder(s). In re Kitson, 341 F. App'x 234, 237 (7th Cir. 2009). "Unlike limited partnerships, all S Corporation shareholders enjoy limited liability regardless of their level of participation in the business." Thompson v. United States, 87 Fed. Cl. 728, 731 n.4 (Fed. Cl. 2009).

Beginning in March 1999, Downing decided to restructure the owner's distributions he received from CBSI as loans. Id. at 3, 14-15. To memorialize the loans, Downing attempted to create a promissory note from an Office Depot template.[2] Id. at 4. He received a total of $249,692.85 allegedly as loans, which he never repaid to CBSI. Id. at 6, 27. In 2007, plaintiff Maximum Availability Limited (Maximum) and CBSI entered into a written agreement that allowed CBSI to re-sell Maximum's *noMAX software to end users in the United States. However, in March 2008, a dispute arose relating to the agreement between Maximum and CBSI. On July 1, 2008, certain assets of CBSI were purchased by Genisys Group Solutions, LLC, a Tennessee limited liability company (Genisys). Dkt. # 48-3, at 1. On or about July 8, 2008, CBSI was given notice of submission of the dispute between it and Maximum to arbitration in New Zealand. Dkt. # 2, at 2.

On October 21, 2008, CBSI received notice of the appointment of an arbitrator, Dkt. # 2, at 2, and was provided a reasonable opportunity to present its case to the arbitrator. On or about April 15, 2009, the arbitrator determined all issues submitted to him and awarded Maximum a total award of $962,859.46. The arbitrator provided a signed copy of the award to CBSI on April 21, 2009. Maximum filed its complaint (Dkt. # 2) in this Court on June 29, 2009. CBSI was served on July 7, 2009 by personal delivery of a copy of the summons and complaint. Dkt. # 9. CBSI failed to answer or otherwise defend in this action, and Maximum subsequently filed a motion for entry of

---

[2] The alleged promissory note relied on by Maximum is a promise by Borrower Randy Downing and Borrower Randy Downing to pay to the order of Randy Downing the sum of Dollars ($ Corporate Minutes), together with interest thereon at the rate of CM % per annum on the unpaid balance. The note was signed in the presence of Witness Computer Business Solutions and Witness Kathy Downing. See Dkt. # 45-1, at 15. Presumably, counsel for Maximum is aware of this anomaly and is instead relying on the debt evidenced by the corporate minutes of March 1, 1999 (Dkt. # 45-1, at 14) and the Randy Downing Loan Register (Dkt. # 45-1, at 17-27). Ironically, when Downing moved for summary judgment, he did not raise the validity of the promissory note itself.

default by the Court Clerk. Dkt. # 11. The Court Clerk entered default against CBSI on August 25, 2009. Dkt. # 12. The Court entered default judgment in favor of Maximum against CBSI on September 29, 2009. Dkt. # 20. Maximum was awarded $962,859.46, plus post-judgment interest.

On July 13, 2010, CBSI, Genisys, Downing, Kathy Downing, Jennifer Downing, and Luke Miller entered into a "Settlement Agreement and Mutual Release [Settlement Agreement]," apparently in connection with a dispute that arose in connection with Genisys's prior purchase of certain CBSI assets and the subsequent relationship between the parties. Dkt. ## 48, at 3; 48-2, at 1; 51, at 2. Downing claims that the Settlement Agreement discharged all liabilities arising between the parties. Dkt. # 48, at 3. He also claims that although CBSI is still recognized as a corporation by the State of Oklahoma, it has had "no activity at all" since July 2008. Dkt. # 45-1, at 2.

On January 6, 2011, Maximum filed a garnishment affidavit, stating that it believed Downing "is indebted to or has property within his possession or under his control . . . belonging to the Defendant/Judgment Debtor." Dkt. # 39, at 1. The Court Clerk issued a garnishment summons to Downing (Dkt. # 40), and Downing filed an answer stating that he believed that at the time of the service of the garnishment summons, or upon the date it became effective, he was not indebted to CBSI for any amount of money, nor did he "have possession or control of any property, money, goods, chattels, credits, negotiable instruments or effects" belonging to CBSI or in which CBSI had an interest. Dkt. # 42, at 1. Maximum timely filed its Notice of Election to Take Issue with Garnishee's Answer.[3] Dkt. # 43.

---

[3] Pursuant to OKLA. STAT. tit. 12, § 1177, "[t]he answer of the garnishee shall in all cases be conclusive of the truth of the facts therein stated, with reference to the garnishee's liability to the defendant unless the judgment creditor shall . . . serve upon the garnishee or the garnishee's attorney . . . a notice in writing that the judgment creditor elects to take issue with the garnishee's answer."

3

Maximum then moved for summary judgment as to Downing's liability to CBSI for $249,692.85, plus accrued interest. Dkt. # 45, at 1. Maximum alleges that Downing admitted in an asset hearing that CBSI loaned him that amount, which was never repaid. Id. at 3-4. Therefore, it claims there is no genuine issue of material fact as to his debt, and that it is entitled to summary judgment as a matter of law. Id. at 7. Following Maximum's motion for summary judgment, Downing filed a motion to amend his answer. Dkt. # 46. He claims that defenses exist that were not included in the original answer, and that amendment is necessary to comply with OKLA. STAT. tit. 12, § 1173.3, which governs a garnishee's answer and requires the garnishee to claim any "setoff, defense, other indebtedness, liability, lien, or claim to the property." Downing also filed a motion for summary judgment (Dkt. # 48), claiming that Maximum's claim against him is barred by OKLA. STAT. tit. 12, § 1186 and that he had no obligation to CBSI based on the transfer of assets from CBSI to Genisys. In the alternative, he argues that to the extent any liability exists on his part, he is entitled to set off that liability in the amount owed to him by CBSI.

**II.**

Downing moves for leave to amend his answer. Dkt. # 46. OKLA. STAT. tit. 12, § 1173.3 requires that

> Within ten (10) days after service of the garnishment, the garnishee shall file its answer with the court clerk and pay or deliver to the judgment creditor's attorney or to the judgment creditor if there is no attorney the indebtedness or property belonging to or owed to the defendant, together with a copy of the answer which shall state:
>
> 1.   Whether the garnishee was indebted or under any liability to or had in garnishee's possession or control, any property belonging to the defendant. When the garnishee shall be in doubt respecting any such liability or indebtedness, the garnishee may set forth all of the facts and circumstances concerning the same, and submit the question to the court;

4

> 2. If the garnishee shall claim any setoff, defense, other indebtedness, liability, lien, or claim to the property, the facts and circumstances . . . .

In his original answer pursuant to § 1173.3, Downing stated that "at the time of the service of the Garnishment Summons, or upon the date it became effective, the Garnishee was not indebted to the Judgment Debtor for any amount of money nor did the Garnishee have possession or control of any property, money, goods, chattels, credits, negotiable instruments or effects belonging to the Judgment Debtor or in which the judgment debtor had an interest." Dkt. # 42, at 1. Downing did not claim entitlement to any additional defenses. However, he now seeks leave to amend to include defenses to Maximum's claim not originally included in his answer. Dkt. # 46, at 2. Specifically, he seeks to add the following defenses: that the garnishment action is barred by OKLA. STAT. tit. 12, § 1186; that any obligation he had to CBSI was released prior to the time of service of the garnishment summons; and that he is entitled to set off any amount of liability by funds owed to him by CBSI. Id. at 2-3.

Rule 15(a) provides that "after a responsive pleading has been served, a party may amend its pleading "only by leave of court or by written consent of the adverse party," and that "leave shall be freely given when justice so requires." Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006); Bradley v. Val-Mejias, 379 F.3d 892, 900 (10th Cir. 2004). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance . . . the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). The purpose of Rule 15(a) is to "provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" Minter, 451 F.3d at 1204 (quoting Hardin v. Manitowoc-Forsythe Corp.,

691 F.2d 449, 456 (10th Cir. 1982)).  Leave to amend is a matter committed to the court's discretion, but the district court must give a reason for a refusal.  Fed. Ins. Co. v. Gates Learjet Corp., 823 F.2d 383, 387 (10th Cir. 1987).

Maximum opposes Downing's motion to amend on the ground that such an amendment would violate § 1173.3, and that amendment would cause it prejudice because its motion for summary judgment was based on Downing's original answer.  A court may deny leave to amend if the amendment would be futile.  Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007).  A proposed amendment is futile if the new claims or defenses would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment.  McNulty v. Sandoval Cnty., 222 F. App'x 770, 775 (10th Cir. 2007)(unpublished);[4] Lind v. Aetna Health, Inc., 466 F.3d 1195, 1199 (10th Cir. 2006); Bradley, 379 F.3d at 901.  A court may also deny leave to amend "when the party filing the motion has no adequate explanation for the delay."  Minter, 451 F.3d at 1206 (quoting Frank v. U.S. West, Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)). "Undue prejudice" to an opposing party may also justify denial of a motion to amend.  Foman, 371 U.S. at 182.

First, Maximum argues that Downing should not be permitted to amend its answer because, under § 1173.3, he was required to set forth all defenses to the garnishment action within ten days of service, and that his failure to do so waived any other defenses.  Oklahoma courts have not spoken as to whether compliance with § 1173.3 is subject to amendment.  However, typically, "[a] defendant is required to affirmatively plead 'any . . . matter constituting an avoidance or affirmative

---

[4]  Unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. 32.1; 10th Cir. R. 32.1.

6

defense.'" Peters v. Terminix Int'l, No. 05-CV-0719-CVE-SAJ, 2007 WL 171910, at * 2 (N.D. Okla. Jan. 18, 2007). But although "[w]here an affirmative defense is not pled, it is waived," RST Serv. Mfg., Inc. v. Musselwhite, 628 P.2d 366, 368 (Okla. 1981), waiver of defenses does not happen immediately. Instead, "[w]hen a party omits an affirmative defense or discovers new evidence giving rise to a defense . . . the party must move to amend his pleadings under Fed. R. Civ. P. 15(a) to rely on that defense in a dispositive motion or at trial." Peters, 2007 WL 171910, at * 2. The Tenth Circuit Court of Appeals has opined that "the best procedure is to plead an affirmative defense in an answer or amended answer," and that, in determining whether to permit an amended answer, courts consider the usual factors of "undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed." Ahmad v. Furlong, 435 F.3d 1196, 1202 (10th Cir. 2006)(internal quotations omitted). However, the Ahmad court determined that although amendment to the answer is the best practice, constructive amendment could also occur by raising a previously unraised defense in a motion for summary judgment. Id. And in construing a different section of the garnishment statute, the Oklahoma Supreme Court has noted that "the extension of time within which to file pleadings in a garnishment proceeding is a matter properly within the sound judicial discretion of the trial court." Underwriters v. Cannon, 538 P.2d 210, 212 (Okla. 1975).

Based on the general practice of leave freely given when justice requires, as well as the Oklahoma Supreme Court's recognition of trial court discretion in the garnishment statute deadlines, the Court will permit amendment of Downing's answer. Although the proposed defenses were not in Downing's initial answer, the failure to include them was not the result of undue delay, and it has not resulted in undue prejudice to Maximum. Downing's motion to amend came less than three

months after its initial answer, and Maximum responded to all of his proposed defenses in both its reply in support of its motion for summary judgment and its response in opposition to Downing's motion for summary judgment. Therefore, no undue delay or prejudice would justify denial of leave to amend,[5] and the Court will exercise its duty to freely grant leave to amend the answer.

### III.

Both parties have moved for summary judgment in connection with Downing's proposed defenses.[6] Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored

---

[5] Nor is Maximum entitled to fees and costs incurred in filing its motion for summary judgment. Dkt. # 50, at 3.

[6] Downing filed a response in opposition to the Maximum's motion for summary judgment (Dkt. # 47), as well as his own motion for summary judgment (Dkt. # 48). His response in opposition to plaintiff's motion for summary judgment contained no argument; instead, it stated only that the response incorporated all provisions of Downing's motion for summary judgment. Downing's response fails to comply with LCvR 56.1(c), which sets out the requirements for a response brief in opposition to a motion for summary judgment. Although the Court will consider the summary judgment record as a whole in deciding the cross-motions for summary judgment, Downing is reminded that, in the future, he must comply with all local rules governing pleadings.

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court draws "all justifiable inferences," id. at 254, and construes the record in the light most favorable, Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998), to the party opposing summary judgment.

**A.**

Downing first argues that Maximum's claim against him fails as a matter of law pursuant to OKLA. STAT. tit. 12, § 1186, which states that "[n]o judgment shall be rendered upon a liability of the garnishee arising . . . [b]y reason of his having drawn, accepted, made, endorsed or guaranteed any negotiable bill, draft, note, or other security." He argues that Maximum's garnishment action is based on a promissory note signed by Downing, and is therefore barred as a matter of law. Maximum argues that Downing waived any defenses to liability not properly included in his answer. Dkt. # 51, at 4. As stated, the Court does not find that Downing's defenses have been waived.

However, Maximum also argues that § 1186 does not bar its action because a subsequent clause in that provision states that no judgment shall be rendered upon liability of the garnishee arising "[b]y reason of any money or other thing owing from him to the defendant, unless before judgment against the defendant it shall become due absolutely and without depending on any future emergency." Maximum argues that § 1186, read as a whole, authorizes its suit because the debt owed by Downing to CBSI was due and owing at the time the garnishment summons was served. Dkt. # 51, at 8.

Neither party's § 1186 argument is persuasive. Maximum's argument that the fourth clause of the section renders irrelevant the first clause is unfounded. And Downing's argument assumes, without explanation, that because Maximum relies on a promissory note as support for Downing's debt to CBSI, the garnishment action falls within the first clause of § 1186. However, there is no promissory note in the summary judgment record payable to the order of CBSI.[7] The note relied upon by the parties states that "for value received, the undersigned [Randy Downing and Randy Downing] hereby jointly and severally promise to pay to the order of Randy Downing" the sum of money referenced in accompanying corporate minutes. See n.2, supra. At the asset hearing, Downing stated that he had structured his owner's distributions as a loan, and that he drew up the promissory note to document the transaction. Dkt. # 45-1, at 3. Although the corporate minutes accompanying the promissory note suggest that the note was in fact intended to create a loan from CBSI to Randy Downing, id. at 14, that intention is not borne out by the face of the note. The note

---

[7]  Section 1186 applies only if the promissory note was a negotiable instrument. Such an instrument is defined by Oklahoma law to mean "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order" that: "(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money." OKLA. STAT. tit. 12A, § 3-104(a).

10

is not payable to CBSI, and, therefore, it does not evidence a liability to CBSI. Although the Court does not exclude the possibility of liability arising by other means, summary judgment based on § 1186 is inappropriate.[8]

Downing also moves for summary judgment on the ground that he had no obligation to CBSI because, at the time of service of the garnishment summons, any obligation on his part was not the property of CBSI. Dkt. # 48, at 6. Downing claims that the promissory note[9] was "sold, transferred, assigned, conveyed, granted and delivered to [Genisys] . . . under the Bill of Sale and Assignment and Assumption Agreement [Bill of Sale]." Id. He further argues that "[t]hereafter, it was effectively released . . . in the [Settlement Agreement]." Id. In support, Downing attaches an

---

[8]  Moreover, even if the note were properly made to order or bearer, there is a genuine issue of material fact as to whether the note from Downing to CBSI was "payable on demand or at a definite time." The only information about the loan in the summary judgment record comes from Downing's testimony and the minutes from CBSI board meetings at which the loan was approved. The minutes, which explain the structure of the loan to Downing, state that "[t]he period of time will not be set at this time," but that "[t]he percentage of interest will be set at the current interest rate plus 1% if not paid in full by March 1, 2009." Id. at 14. The relevant clauses of the promissory note concerning time for repayment are marked "not applicable." Id. at 15. Maximum's counsel asked Downing, "[s]o reading this language, the percentage of interest will be set at the current interest rate plus one percent if not paid in full by March 1st, 2009, to me that implies that the maturity date or the date that the loan matured would be March 1, 2009. Does that square with your recollection?" Downing responded "yeah." Dkt. # 45-1, at 6-7. However, any acknowledgment by Downing that he owed money to CBSI, and that the term date was March 1, 2009, is insufficient to overcome ambiguity raised by the underlying documents as to whether the promissory note, if valid, was "payable on demand or at a definite time." "On motion for summary judgment, ambiguities are resolved against the moving party, . . . and an ambiguity may raise a genuine issue of fact sufficient to make summary judgment inappropriate." Deepwater Investments, Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1111 n.9 (10th Cir. 1991).

[9]  As noted, the promissory note relied upon by the parties creates liability on the part of Downing to himself only. However, the Court will construe the parties' reference to the promissory note to refer more broadly to money owed by Downing to CBSI.

11

affidavit, which states his belief that he was not indebted to CBSI, as well as the Settlement Agreement and Bill of Sale. Dkt. ## 48-1, 48-2, 48-3. He claims that, based on these documents, there is no question that he owed no money to CBSI at the time the garnishment summons was issued. However, these documents raise genuine issues of material fact. As Maximum argues, "[t]he Bill of Sale states that Genisys was 'entitled to purchase <u>certain</u> assets and obligated to assume <u>certain</u> liabilities' of CBSI," but the "assets to be purchased and the liabilities to be assumed are defined in the Asset Purchase Agreement, not the Bill of Sale." Dkt. # 51, at 6 (emphasis in original). The Settlement Agreement also references the Asset Purchase Agreement and other undefined terms in defining the scope of its release, and Maximum disputes that the promissory note was included in the Settlement Agreement. <u>Id.</u> at 6-7. In support, Maximum cites two provisions of the Asset Purchase Agreement as proof that the promissory note was not part of that agreement, and, therefore, was not included in the Bill of Sale and subsequent Settlement Agreement. <u>Id.</u> at 7. However, neither party submitted the Asset Purchase Agreement, so it is impossible to resolve on the summary judgment record the parties' disagreement as to whether any liability of Downing was transferred by CBSI to Genisys, or whether such liability was included in the later release of claims in the Settlement Agreement. Summary judgment is therefore inappropriate.

Finally, Downing includes in his motion for summary judgment an alternative claim that, if he is found to owe money to CBSI, he is entitled to a set off of $125,000 based on his non-stock infusion of operating capital to CBSI. Dkt. ## 48, at 7; 48-1, at 3. As noted, Downing is permitted to amend his answer to add this new defense. However, he is not entitled to summary judgment regarding the set off. Maximum contests his right to set off, and Downing's blanket assertion that he was owed a sum from CBSI does not meet his burden of showing no genuine issue of material

12

fact surrounding this defense. Downing has proffered no documentation of his claim to money owed to him by CBSI, nor details about how the alleged infusion was structured. Dkt. # 51, at 5. There is a genuine issue of material fact as to any money owed to Downing by CBSI, as well as to Downing's entitlement to a set off defense.

**B.**

Maximum's motion for summary judgment is also denied. Maximum argues that there is no genuine issue of material fact as to Downing's debt to CBSI because Downing admitted the existence of the unpaid promissory note at the asset hearing, and that his answer stating that he is not indebted to CBSI is therefore inaccurate. Dkt. # 45, at 5-6. However, as noted above, there is a genuine issue of material fact as to Downing's indebtedness to CBSI. Maximum also argued that Downing's defenses not originally pled in the answer were waived, Dkt. # 49, at 2, but the Court has rejected that argument. Therefore, genuine issues of material fact remain as to the indebtedness of Downing to CBSI and the availability of certain defenses, and summary judgment is inappropriate.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment Against the Garnishee and Brief in Support (Dkt. # 45) is **denied**; garnishee's Opposed Motion for Leave to Amend Garnishee's Answer and Brief in Support (Dkt. # 46) is **granted**; and Garnishee's Motion for Summary Judgment Against Judgment Creditor and Brief in Support (Dkt. # 48) is **denied**.

**IT IS FURTHER ORDERED** that garnishee shall file his amended answer no later than **seven (7)** days from the date of entry of this Opinion and Order.

**IT IS FURTHER ORDERED** that upon receipt of garnishee's amended answer, plaintiff shall have **twenty (20)** days to serve a notice in writing that it elects to take issue with the garnishee's amended answer, pursuant to the procedure outlined in OKLA. STAT. tit. 12, § 1177. If plaintiff elects to take issue with garnishee's amended answer, the matter is referred to the Honorable T. Lane Wilson for evidentiary hearing on **July 12, 2011** and for report and recommendation.

**DATED** this 1st day of June, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT