IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MAXIMUM AVAILABILITY LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-416-CVE-PJC |
| | ) | |
| COMPUTER BUSINESS SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RANDY LEE DOWNING, | ) | |
| | ) | |
| Garnishee. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Maximum Availability Limited's ("Max") second Motion for Summary Judgment Against the Garnishee, Randy Lee Downing ("Downing").[1] [Dkt. No. 74]. Pursuant to 28 U.S.C. § 636, and for the reasons set forth below, the undersigned U.S. Magistrate Judge **RECOMMENDS** that the motion be **DENIED**.

---

[1] On June 1, 2011, District Judge Claire V. Eagan denied Motions for Summary Judgment by Max, and Garnishee Downing. [Dkt. No. 56]. Although the issues presented in that motion were similar to those presented here, the record before the Court was significantly different.

# I.
# BACKGROUND

The background of this dispute is set forth in detail in Judge Eagan's June

1, 2011, *Opinion and Order* [Dkt. No. 56], and will not be repeated here.  Instead,

a Timeline of key events is provided below.  The seeds of our disagreement

were planted when Max and CBSI entered into a written agreement that allowed

CBSI to sell Max's *noMax software to end users in the United States.  Those

seeds blossomed into a full-blown dispute in March 2008.  [Dkt. No. 2, ¶¶ 7-9].

Ultimately, Max resorted to arbitration in an effort to resolve the matter.

Against that backdrop, the following events occurred:

> **June 30, 2008** – CBSI and Genisys Group Solutions LLC ("Genisys") entered into an Asset Purchase Agreement ("APA").  [Dkt. No. 74-5].
>
> **July 1, 2008** – CBSI, Randy and Kathy Downing[2] and Genisys executed Bill of Sale and Assignment and Assumption Agreement ("Bill of Sale") related to the APA.  [Dkt. No. 74-10].
>
> **October 2008** – Max invoked the arbitration provision in its contract with CBSI.  CBSI was notified of the appointment of an arbitrator and given reasonable opportunity to present its case. [Dkt. No. 2, at 2].
>
> **April 15, 2009** – Max obtained an arbitration award of $966,885.34 against CBSI.  [Dkt. No. 2, ¶ 14].
>
> **June 29, 2009** – Max sued CBSI in the Northern District of Oklahoma seeking to confirm the arbitration award and enter Judgment against CBSI.  [Dkt. No. 2].

---

[2]     Kathy Downing is Randy Downing's spouse.  Randy and Kathy Downing ("the Downings") were the shareholders of CBSI.

**September 29, 2009** – Default Judgment was entered in favor of Max and against CBSI in the amount of $962,859.46, plus post-judgment interest.  [Dkt. No. 20].

**July 13, 2010** – Genisys, CBSI, and the Downings executed a Settlement Agreement and Mutual Release by which all parties released all claims, known or unknown, related to (1) "certain representations and disclosures by CBSI, Randy Downing and Kathy Downing in connection with the Asset Purchase Agreement and Acquisition," and (2) disputes related to the Downings' employment and termination or employment by Genisys.  [Dkt. No. 74-12].

**2011** – Max served its first Garnishment Summons on Randy Downing. Downing denied any existing debt to CBSI.  Both parties filed Motions for Summary Judgment.  [Dkt. Nos. 40, 42, 43, 45, 48]. The District Court denied both motions on June 1, 2011.  [Dkt. No. 56].

**July 5, 2012** – Max served its <u>second</u> Garnishment Summons on Randy Downing.  [Dkt. No. 70].

**July 13, 2012** – Randy Downing Answered the Garnishment Summons and again denied any indebtedness to CBSI.  [Dkt. No. 72].

**August 1, 2012** – Max objected to Randy Downing's Answer.  [Dkt. No. 73].

**February 26, 2013** – Max filed its second Motion for Summary Judgment Against the Garnishee.  [Dkt. No. 74].

## II.
## APPLICABLE LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993).

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th

4

Cir.1998).  *Taylor v. City of Bixby, Okla.*, 2012 WL 6115051, *3 (N.D.Okla. Dec. 10, 2012).

A contract must be considered as a whole so as to give effect to all its provisions without narrowly concentrating upon some clause or language taken out of context.  15 Okl. Stat. Ann. § 157. The language in a contract is given its plain and ordinary meaning unless some technical term is used in a manner meant to convey a specific technical concept.  15 Okl. Stat. Ann. § 160.   The court must interpret a contract so as to give effect to the intent of the parties at the time the contract was formed.  15 Okl. Stat. Ann § 152.

The parol evidence rule provides that unless fraud or mistake is involved, pre-contract negotiations and oral discussions are merged into, and superseded by, the terms of the executed written agreement.  15 Okl. Stat. Ann. §§ 137 & 155.  While parol testimony cannot vary, modify or contradict the terms of the instrument, it is admissible to explain the meaning of words when there is a latent ambiguity in the written text of the agreement.  *Ollie v. Rainbolt*, 669 P.2d 275, 279 (Okla. 1983); *Mercury Inv. Co. v. F. W. Woolworth Co.*, 706 P.2d 523 (Okla. 1985). Therefore, the practical construction of an agreement, as evidenced by the acts and conduct of the parties, is available only in the event of an ambiguity. *Mercury*, 706 P.2d at 529. *But where a contract is complete in itself and, as viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended. Id.* (emphasis in original). The intention of the parties

5

cannot be determined from the surrounding circumstances, but must be gathered from a four-corners' examination of the contractual instrument in question.  *Id.* at 529.

### III.
### FINDINGS OF FACT

#### A. Downing Was Indebted to CBSI at Least as of June 30, 2008.

In its June 1, 2011, *Opinion and Order*, the District Court held that, for purposes of summary judgment, the purported Promissory Note (*See*, Exh. "A" to Dkt. No. 74) presented to the Court did not establish a liability from Downing to CBSI, because, on its face, the Note showed payment owing *to Downing* , not to CBSI.  [Dkt. No. 56, at 10-11].[3]  However, the Court's ruling did not "exclude the possibility of liability arising by other means."  [*Id.*].

For purposes of this motion, the undersigned finds that Randy Downing owed CBSI $249,692.85 ("the loan amount"), plus interest, <u>at least as of June 30, 2008</u> – the date of the APA.  It is undisputed that Downing borrowed the loan amount from CBSI and did not repay it.  *See* Max's Statement of Undisputed Material Facts [Dkt. No. 74, at 3-4] and Downing's Statement of Undisputed Material Facts [Dkt. No. 76, at 4-7].  The Corporate minute books reflect loans from CBSI to Downing totaling the loan amount, and an CBSI's and Downing's

---

[3]      The Promissory Note evidences Randy Downing's promise to "pay to the order of Randy Downing" an unspecified amount of money "as stated in Corporate Minutes."  [Dkt. No. 74-3].  No due date is specified in the "Note," nor is any interest rate set forth.

expectation the loan amount would be repaid.  [Dkt. No. 74-1].  Downing has admitted that the loan amount was not repaid.  [Dkt. No. 76, at 4, admitting Max's Statement of Undisputed Fact No. 10].

### B.  Downing's Loans Resulted in a Receivable Owed to CBSI

The Minutes of CBSI's Seventh Meeting of Directors on March 1, 1999, reflect that the Directors authorized Downing to "withdraw money from CBSI in the form of a loan that will be repaid to the company over a specified period of time, with a specified interest rate."  [Dkt. No. 74-1].  The Minutes further state: "Document AJ.1 is the loan agreement between Randy Downing and CBSI."  [*Id.*].  Document AJ.1 is a Promissory Note signed by Randy Downing as Borrower and dated March 1, 1999.  [*Id.*].  However, as the Court noted in its June 1, 2011, *Opinion and Order*, the Promissory Note is *payable to Randy Downing*, not to CBSI.  Thus, on its face, this Promissory Note does not establish a "note receivable" between Downing and CBSI.

However, the loans received by Downing from CBSI would create an account receivable.  The Board Minutes and the loan registers attached as documents "BK.1," "BO.1," "BS.1," and "BW.1," to the 2004-07 Board of Directors' Minutes [Dkt. No. 74-1] establish, for purposes of the APA, an "account receivable" owed by Downing to CBSI.  *See Adams v. Mid-West Chevrolet Corp.*, 179 P.2d 147, 149 (Okla. 1947) (where director withdraws money from corporation for his personal use, he is obligated to corporation therefor, with

interest, until repaid).  Such a receivable/debt obligation may be subject to garnishment by a Judgment Creditor.  *See, Conine v. Leikam*, 570 P.2d 1156, 1158 (Okla. 1977).

**C. Genisys Purchased Downing's Debt to CBSI on June 30, 2008.**

The parties agree that Downing owed the loan amount to CBSI and did not repay it.  The critical question is what happened to Downing's debt following execution of the APA?  [See Dkt. Nos. 74-5 and 74-10].  In deciding Max's first Motion for Summary Judgment, the District Court did not have the advantage of having the APA in the evidentiary record.  This prevented the Court from determining whether Genisys had purchased Downing's loan obligation to CBSI as part of the APA.[4]  The APA is part of the record before the Court today.

Max contends that Downing's debt *was not transferred* to Genisys under the APA because the debt was never disclosed to Genisys or listed or disclosed in the APA or attached schedules.  Furthermore, Genisys representatives say that they were not aware of the Downing loans, had no knowledge of them and did not intend to purchase them.  [Affidavit of Clyde Cutrer, Dkt. No. 74-9; Affidavit of Jodi Pickering, Dkt. No. 74-11].  According to Max, Downing's debt still

---

[4]     "[N]either party submitted the Asset Purchase Agreement, so it is impossible to resolve on the summary judgment record the parties' disagreement as to whether any liability of Downing was transferred by CBSI to Genisys, or whether such liability was included in the later release of claims." *See Opinion and Order*, Dkt. No. 56, at 12).

remains with CBSI and his repayment obligation is subject to garnishment under Oklahoma law.

Downing contends that his debt to CBSI *was transferred* to Genisys pursuant to the APA and was released by Genisys pursuant to the parties' July 2010 Settlement Agreement and Mutual Release. [Dkt. No. 74-12]. As a result, Downing contends, he had no obligation to CBSI at the time he was served with the second Garnishment Summons (on or about July 6, 2012). Resolution of this issue requires an examination of the APA between CBSI and Genisys.

The APA stated that Genisys wished to purchase "certain assets" of CBSI. This was *not*, as counsel for Downing described it at the June 6 Hearing, a purchase of CBSI "lock, stock and barrel." The APA clearly provides that Genisys is purchasing some assets and not others.[5] The assets being purchased were specified in Article I of the APA. Two particular provisions are relevant to the Court's analysis. According to the APA Genisys purchased:

(a) All contracts related to the operation of the Business to which Seller is a party or third-party beneficiary, which are set forth on Schedule 2.3 and which have "Yes" indicated in the "Purchased" column (the "Purchased Contracts");

(b) All trade accounts receivable and all other accounts or notes receivable of Seller, including without limitation, those which are set forth in Schedule 2.4 (the "Accounts Receivable") . . . .

Dkt. No. 74-5, Art. I, Section 1.1(a) & (b).

---

[5]      Certain assets were specifically excluded from the purchase. APA, Section 1.2 [Dkt. No. 74-5].

Downing's debt to CBSI is not among the contracts purchased by Genisys under Section 1.1(a), nor can it be determined on the record before the Court that this debt was a note receivable under Section 1.1(b); however, the obligation seems to qualify as an "account receivable" under Section 1.1(b).[6]

The difference in the wording of Section 1.1(a) and 1.1(b) is significant. Under section 1.1(a), Genisys designated specific contracts it was purchasing from CBSI.  These were expressly listed on Schedule 2.3 and designated with the word "Yes" in the column labeled "Purchased."  Under the clear language of the APA, Genisys' purchase was limited to these specific contracts and no others.  In contrast, the purchase language used in Section 1.1(b) is expansive.  Here, the APA states that Genisys is purchasing *all* of CBSI's accounts or notes receivable, "including without limitation" those set forth in Schedule 2.4.  This language unambiguously states that Genisys is purchasing all receivables – not just those listed in Schedule 2.4.

The APA further provides that CBSI is to deliver a Bill of Sale for all of the purchased Assets that were "tangible property" and will provide an Assignment of all of the Assets considered "intangible personal property."  [Dkt. No. 74-5 at Art. I, Sec. 1.6].  Accordingly, the Bill of Sale was executed on July 1, 2008 [Dkt.

---

[6]     At the very least, there is a genuine factual dispute as to whether the loan obligation is an account receivable.  This factual dispute would preclude entry of summary judgment in Max's favor.

No. 74-10] and transferred to Genisys all of CBSI's rights in the tangible assets and assigned to Genisys all of CBSI's rights in the intangible assets.  [*Id.*].

From the clear and unambiguous language of the APA and the Bill of Sale, the Court finds that Genisys purchased all of CBSI's accounts/notes receivable and not just those listed in Schedule 2.4, and further finds that these receivables included Downing's loan obligation to CBSI.[7]

The Court's finding in Paragraph III(C) is a sufficient basis to deny the pending Motion for Summary Judgment because if Genisys purchased Downing's loan obligation on or about June 30, 2008, Downing had no such obligation to CBSI for Max to garnish in July 2012.  Thus, the Court need not address the issue of whether Downing's loan obligation was extinguished by virtue of the 2010 Settlement Agreement among Genisys, CBSI and the Downings.

## IV.
## CONCLUSIONS OF LAW

1.   The underlying lawsuit was brought under the Convention on the Recognition of Foreign Arbitral Awards.  This Court has jurisdiction pursuant to 9 U.S.C. § 203 and 28 U.S.C. § 1331.

---

[7]     The record evidence includes affidavits from Genisys principals to the effect that the company neither knew of the Downing debt nor intended to purchase the Downing debt from CBSI.  [Dkt. No. 74-9 at ¶¶ 7, 9 -13].  This parol evidence is not admissible to alter the unambiguous terms of the APA except in certain limited situations not presented here.  *Mercury*, 706 P.2d at 529.

2. Judgment was entered herein for Plaintiff in the amount of $962,859.62, plus interest. [Dkt. No. 20]. The motion at issue concerns a collection effort related to this underlying Judgment.

3. On July 5, 2012, Max served its Garnishment Summons on Randy Downing. [Dkt. No. 70]. Downing Answered and denied any indebtedness to CBSI and further denied having any money, or other thing of value belonging to CBSI. [Dkt. No. 72]. Max timely objected to Downing's Answer. [Dkt. No. 73]. *See* 12 O.S. § 1172, *et seq.*

4. On Feb. 26, 2013, Max filed its Motion for Summary Judgment claiming Downing was indebted to CBSI as of July 5, 2012, and subject to garnishment under Oklahoma law to pay a portion of the Judgment in favor of Max and against CBSI. [Dkt. No. 74].

5. Downing borrowed nearly $250,000 from CBSI over the period 1999 to 2003. Downing did not repay this money.

6. On June 30/July 1, 2008, CBSI and Genisys entered into the APA and Bill of Sale. Pursuant to the APA, Genisys purchased all receivables of CBSI's. [Dkt. No. 74-5, Article I, Section 1.1(b)].

7. Genisys' purchase of CBSI's receivables was not limited to those listed in Schedule 2.4 of the APA. *Id.*

8. On June 30/July 1, 2008, Genisys purchased Downing's loan obligation to CBSI.

9. On July 5, 2012, when Downing was served with a Garnishment Summons in this matter, he had no debt obligation owing to CBSI because that obligation had previously been purchased by Genisys

10. Genuine disputes of material fact preclude entry of summary judgment in Max's favor.  Max has failed to establish that it is entitled to judgment in its favor as a matter of law.

Having reviewed the record evidence, the Court **RECOMMENDS** that the Plaintiff's Motion for Summary Judgment be **DENIED**.

## V.
## OBJECTIONS

The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned.  As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation.  A party wishing to file objections to this Report and Recommendation must do so by July 1, 2013.  *See* 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (*quoting Moore v. United States*, 950 F.2d 656, 659 (10th Cir.

1991)).   Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

DATED this 14th day of June 2013.

_____
Paul J. Cleary
United States Magistrate Judge