UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MAXIMUM AVAILABILITY LIMITED, a New Zealand corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| COMPUTER BUSINESS SOLUTIONS, INC., an Oklahoma corporation, | ) ) ) Case No. 09-CV-0416-CVE-PJC |
| Defendant, | ) ) ) |
| and | ) ) |
| RANDY LEE DOWNING, | ) ) |
| Garnishee. | ) ) |

## OPINION AND ORDER

Now before the Court are Magistrate Judge Paul J. Cleary's Report and Recommendation (Dkt. # 86) and Plaintiff's Written Objection to the Magistrate's Report and Recommendation on Plaintiff's Motion for Summary Judgment Against the Garnishee (Dkt. # 87). Garnishee Randy Lee Downing filed a response to plaintiff Maximum Availability Limited's (Maximum) objections to the Report and Recommendation. Dkt. # 88. The magistrate judge reviewed Plaintiff's Motion for Summary Judgment Against the Garnishee and Brief in Support (Dkt. # 74), Garnishee's Response in Opposition to Plaintiff's Motion for Summary Judgment Against the Garnishee and Brief in Support (Dkt. # 76), and Maximum Availability Limited's (Maximum) Reply Brief in Support of Plaintiff's Motion for Summary Judgment against the Garnishee (Dkt. # 77). The magistrate judge also held a hearing (Dkt. # 85) regarding the motion for summary judgment (Dkt. # 74) and recommended that Maximum's motion for summary judgment be denied.

**I.**

The factual background of this case was detailed in this Court's opinion and order regarding previous motions for summary judgment (Dkt. # 56); however, the Court will give a brief overview of the undisputed material facts necessary to resolving the current motion for summary judgment before reviewing the magistrate judge's Report and Recommendation.

Randy Lee Downing, who was the chairman, president, and owner of Computer Business Solutions, Inc. (CBSI), restructured owner's distributions as loans from CBSI. Dkt. # 74-1, at 3-6, 12-13; see Dkt. # 56, at 2. From March 1999 through December 2003, Downing received a total amount of $249,692.85, allegedly as loans, which were not repaid. Id. at 6-10. The loans were memorialized in writing - - an attempted promissory note. Dkt. # 74, at 6; Dkt. # 74-1, at 4-5. Maximum and CBSI entered into an agreement to allow CBSI to resell Maximum's *noMAX software. A dispute arose regarding the agreement between Maximum and CBSI. Thereafter, CBSI and Genisys Group Solutions, LLC (Genisys) entered into an Asset Purchase Agreement (APA). Maximum submitted the dispute with CBSI[1] to an arbitrator who awarded Maximum an amount of $962,859.46. See Dkt. # 56, at 2.[2]

On September 29, 2009, a default judgment was entered against CBSI and for Maximum in the amount of $962,859.46, plus post judgment interest. Dkt. # 20. On July 13, 2010, CBSI, Downing, Downing's wife, and Genisys executed a settlement agreement and release of claims related to the APA and certain employment issues. Dkt. # 74-12. Maximum filed a second

---

[1] As the Court noted in its previous opinion and order, CBSI received notice of the appointment of an arbitrator and was given a reasonable opportunity to present its case. Dkt. # 56, at 2.

[2] The prior summary judgment order is law of the case. Dkt. # 56.

garnishment affidavit[3] that stated that Maximum believed that Downing, the garnishee, was indebted or had property that belonged to CBSI. Dkt. # 69. The Court Clerk thereafter issued a garnishment summons (Dkt. # 70), which was served on Downing (Dkt. # 71). Downing filed an answer that he was not indebted to CBSI for any amount of money and that he did not have any property that belonged to CBSI or in which CBSI had an interest. Dkt. # 72. Maximum filed a timely objection to Downing's answer. Dkt. # 73. Maximum thereafter filed the instant motion for summary judgment. Dkt. # 74.

## II.

The key provisions of the APA[4] that will direct the analysis are:

Section 1.1. <u>Assets to Be Sold</u>. Upon the terms and subject to the conditions set forth in this Agreement, at the Closing, Seller shall sell, convey, assign, transfer and deliver to Buyer, and Buyer shall purchase and acquire from Seller, the following property and assets used in the conduct of the Business:
    (a) all contracts related to the operation of the Business to which Seller is a party or third-party beneficiary, which are set forth on <u>Schedule 2.3</u> and which have "Yes" indicated in the "Purchased" column (the "Purchased Contracts");
    (b) all trade accounts receivable and all other accounts or notes receivable of Seller, including without limitation, those which are set forth on <u>Schedule 2.4</u> (the "Accounts Receivable")[ ] . . .

Dkt. # 74-5, at 2.

---

[3] The first garnishment affidavit was the subject of the prior opinion and order (Dkt. # 56) regarding the parties' motions for summary judgment. <u>See</u> Dkt. ## 39, 40, 42.

[4] Although the issues before the Court are substantially the same as the issues presented by the parties in the previous motions for summary judgment, the Court was unable to determine in its previous opinion and order whether "any liability of Downing was transferred by CBSI to Genisys, or whether such liability was included in the later release of claims in the Settlement Agreement[,]" because "neither party submitted the Asset Purchase Agreement." Dkt. # 56, at 12

3

## ARTICLE II.
## REPRESENTATIONS AND WARRANTIES OF SELLER AND SHAREHOLDERS

Seller and the Shareholders, jointly and severally, represent and warrant to Buyer as follows: . . .

Section 2.4. <u>Accounts Receivable</u>. <u>Schedule 2.4</u> contains a complete and accurate list of all Accounts Receivable as of June 30, 2008, which list sets forth the aging of each such Account Receivable. All Accounts Receivable that are reflected on the accounting records of Seller as of the Closing Date represent or will represent valid obligations arising from sales actually made or services actually performed by Seller in the ordinary course of business. Except to the extent paid prior to the Closing Date, such Accounts Receivable are or will be as of the Closing Date current and collectible. There is no contest, claim, defense or right of set off relating to the amount or validity of any Account Receivable.

<u>Id.</u> at 5.

## ARTICLE XI.
## GENERAL PROVISIONS

. . . .

Section 11.4. <u>Governing Law</u>. This Agreement will be governed by and construed under the laws of the State of Tennessee without regard to conflicts of laws principles that would require the application of any other law.

<u>Id.</u> at 10-11.

### III.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>Kendall v. Watkins</u>, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but

rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court draws "all justifiable inferences," id. at 254, and construes the record in the light most favorable, Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998), to the party opposing summary judgment.

## IV.

The Court must conduct a de novo review of the magistrate judge's report and recommendation. Under 28 U.S.C. § 636(b)(1), the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." See also Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996) ("De novo review is required after a party makes timely written objections to a magistrate's report. The district court must consider the actual testimony or other evidence in the record and not merely review the

5

magistrate's report and recommendations."). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**V.**

The magistrate judge recommended that plaintiff's motion for summary judgment (Dkt. # 74) be denied. The magistrate judge found that Downing was indebted to CBSI, that Downing's indebtedness resulted in a receivable owed to CBSI, and that Genisys purchased Downing's debt owed to CBSI. Dkt. # 86, at 6-11. In other words, the magistrate judge concluded that the parties did not dispute that Downing owed a certain sum to CBSI, but the magistrate judge found that he did not have to decide whether subsequent events, including the parties' signed agreement and release, released Downing from any debt owed to CBSI because Downing's debt was included in the APA.    The magistrate judge made three findings of fact. First, the magistrate judge found that Downing was indebted to CBSI. Dkt. # 86, at 6. As noted by the magistrate judge, the parties do not dispute the existence of the debt. Although the Court previously found that the attempted promissory note did not actually create a liability of Downing to CBSI (Dkt. # 56, at 10 n.7), the corporate minutes reflect that Downing borrowed a certain sum from CBSI, which all parties agree was thereafter owed to CBSI. Maximum does not object to that finding. Dkt. # 87, at 2. The Court finds that Downing was indebted to CBSI.

The magistrate judge next found that Downing's loans were a receivable owed to CBSI. Although the magistrate judge noted that the promissory note, "[did] not establish a 'note receivable' between Downing and CBSI[ ]" (Dkt. # 86, at 7), the magistrate judge found that the board minutes and loan registers (Dkt. # 74-1) established that the loans were accounts receivable, subject to garnishment. Dkt. # 86, at 7. In response to the Report and Recommendation, Maximum asserts

6

that, although it agrees that the loans were assets of CBSI, the loans were not anything but that - - an asset. Dkt. # 87, at 3. Maximum argues that the APA did not define the loans as accounts receivable, which Maximum states is significant because the APA states that Section 2.4 of the APA "contains a complete and accurate list of all Accounts Receivable[,] . . ." but the loans to Downing are not included. Dkt. # 87, at 3 (quoting Dkt. # 74-5). Maximum also states that the loans are not listed as accounts receivable in CBSI's financial statements or accounting system. Dkt. ## 74-6, 74-7, 74-11, 77-1, 87, at 3. Maximum argues that CBSI did not record these loans, but CBSI's financial statements do reflect another, unrelated shareholder loan and also include an entry entitled "Accounts Receivable–Other[,]" which does not include the loans to Downing at issue here. In his response to Maximum's objections, Downing asserts that the amounts Downing owed to CBSI were accounts receivable and that the broad language of the APA should clearly include Downing's debt. Dkt. # 88, at 2-3.

In its motion for summary judgment, Maximum argues that the APA, balance sheets, financial statements, and the bill of sale do not reflect the loans to Downing. Dkt. # 74, at 8-9. Maximum notes that Genisys acquired some, but not all, of CBSI's assets. Id. The bill of sale, for example, states that "Genisys was 'entitled to purchase **certain** assets and obligated to assume **certain** liabilities' of CBSI." Id. (emphasis Maximum's). Finally, Maximum argues that the account system's data does not reflect the loans. Id. at 10.

After reviewing the APA and all referenced documents, it is clear that the loans to Downing are not specifically included in the APA. However, Section 1.1(b) of the APA states that the assets sold to Genisys include "all trade accounts receivable and all other accounts or notes receivable of [CBSI], including without limitation, those which are set forth on Schedule 2.4 (the "Accounts

Receivable")[.]" Dkt. # 74-5, at 2. Schedule 2.4 does not include these loans to Downing. Dkt. # 74-8, at 2-3. But, the language of the APA is broad - - the assets sold included "all other accounts or notes receivable" of CBSI. Dkt. # 74-5, at 2. Therefore, if the loans were accounts receivable, the loans were purchased by Genisys.

Maximum argues that the loans are necessarily not accounts receivable because they are not listed in the above-mentioned documents. See Dkt. ## 74, 78. That, however, by the language of the APA, is not determinative. Accounts receivable are not limited to Schedule 2.4 or anything else. Further, as noted by Maximum, Genisys did not purchase every asset, but assets that were excluded from the purchase were listed in the APA. Those exclusions did not include the loans to Downing.

Maximum asserts that the APA, by reference to Schedule 2.4, includes all accounts receivable that were purchased by Genisys. And, because the loans to Downing were not included, that language is determinative. The APA states that "Schedule 2.4 contains a complete and accurate list of all Accounts Receivable as of June 30, 2008, which list sets forth the aging of each such Account Receivable." Dkt. # 74-5, at 5. "A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611 (Tenn. 2006) (citation omitted). "In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent." Id. (citation omitted). The initial task is to "determine whether the language is ambiguous." Id. (citation omitted). "If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute." Id. (citation omitted). Where, however, "contractual language is found to be ambiguous, the court must apply established rules of construction to determine the intent of the parties." Id. (citation omitted). "An ambiguous provision in a contract generally will be construed against the party drafting it[,] . . .

[and] when a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing . . . the contract." Id. (citations omitted).

The APA is not ambiguous. Section 2.4 is a representation and warranty as to the accounts receivable listed in Schedule 2.4. But, the language of Section 1.1(b) that the assets transferred include "all trade accounts receivable and all other accounts or notes receivable of Seller, <u>including without limitation, those which are set forth</u> on <u>Schedule 2.4</u>[,] . . ." (emphasis added) would be meaningless if Section 2.4 were given its most limiting meaning - - that all accounts receivable were listed in Schedule 2.4 and nothing outside of that list could be deemed an account receivable. Additionally, Maximum, in its objection to the magistrate judge's conclusions of law recites that "Genisys' purchase of CBSI's 'trade, accounts and notes' receivables was not limited to those in Schedule 2.4 of the Asset Purchase Agreement." Dkt. # 87, at 6. Thus, even Maximum recognizes that Schedule 2.4 is not an exhaustive list of all accounts receivable purchased by Genisys. The Court finds that Downing's debt to CBSI was an account receivable, which was included in the APA because of the expansive language in article I.

The magistrate judge's third finding of fact was that Genisys purchased Downing's debt to CBSI. Dkt. # 86, at 8. Maximum objects to that finding and it argues that the loans were not included in the purchase, because the APA clearly states that only some assets were purchased while others were excluded and because the loans were not accounts receivable. Dkt. # 87, at 4-5. Maximum further asserts that parol evidence should be considered because CBSI and Downing committed fraud. Id. at 5. In other words, Maximum asserts that affidavits regarding Genisys' knowledge, or lack thereof, of the loans should be considered, and that the lack of knowledge is

9

further proof that Genisys did not purchase Downing's loans. Id. at 5-6. In his response to Maximum's objections, Downing states that he denies that any fraud occurred and that all records were provided to Genisys, and Genisys is "not asserting fraud [or] . . . seeking recission [sic] of the APA and Bill of Sale." Dkt. # 88, at 4. As the Court previously found that the loans were accounts receivable included in the APA, the Court therefore finds that the loans were purchased by Genisys.

The magistrate judge's report contains ten conclusions of law. Dkt. # 86, at 11-13. Maximum does not object to the great majority of them; Maximum does object to the conclusions of law that: Genisys purchased Downing's loan obligation; when Downing was served with the garnishment summons, he had no obligation to CBSI; and there was a genuine dispute as to any material fact precluding granting Maximum's motion for summary judgment. Dkt. # 86, at 12-13; Dkt. # 87, at 4-8. However, pursuant to the Court's previous findings that the loans were accounts receivable purchased by Genisys, the Court finds that Genisys' purchase of the loan obligation relieved Downing of any further obligation, such that Downing would not have had an obligation to CBSI at the time that he was served with the garnishment summons. Therefore, the Court finds that Maximum's motion for summary judgment should be denied.

**IT IS THEREFORE ORDERED** that Magistrate Judge Paul J. Cleary's Report and Recommendation (Dkt. # 86) is **accepted**, and Plaintiff's Motion for Summary Judgment Against the Garnishee and Brief in Support (Dkt. # 74) is **denied**.

**DATED** this 8th day of August, 2013.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE